UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
Oakland Venue

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| | ) | Docket No.:   0971 4:17CR00529-001 YGR |
| **ANNA RAYLENE ARMSTRONG** | ) | |
| | ) | |

**Prepared for:**  The Honorable Yvonne Gonzalez Rogers
United States District Judge

**Prepared by:**  Jessica A. Goldsberry
U.S. Probation Officer Specialist
Oakland, CA
Work: (510) 637-3623
Fax:   (415) 581-7432
jessica_goldsberry@canp.uscourts.gov

**Assistant U.S. Attorney**
Christina Marie McCall
1301 Clay Street, Suite 340S
Oakland, CA 94612
(510) 637-3717
christina.mccall@usdoj.gov

**Defense Counsel**
Edwin Ken Prather  (Appointed)
461 Bush Street, Suite 350
San Francisco, CA 94108
(415) 881-7774
edwin@pratherlawoffices.com

**Sentence Date:**  January 3, 2018 2:00 AM

**Offense:**  <u>Count 1</u>:
Escape from Federal Custody
18 U.S.C. § 751(a) and 18 U.S.C. § 4802(a)
Not more than 5 years imprisonment/$250,000 fine
(Class D Felony)

**Release Status:**  In federal custody since September 26, 2017.

**Detainers:**  None.

**Codefendants:**  None.

**Related Cases:**  CR 17-00530 YGR – Irene Alina Michell

Date Report Prepared:  December 12, 2017          Date Report Disclosed: December 15, 2017

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | March 11, 1983 |
| **Age:** | 34 |
| **Race:** | White |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Female |
| | |
| **SSN#:** | 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 |
| **FBI#:** | 501989PC9 |
| **USM#:** | 59737-298 |
| **State ID#:** | CA25182729 |
| **ICE#:** | N/A |
| **PACTS#:** | 4118303 |
| | |
| **Education:** | Some college |
| **Dependents:** | 4 |
| **Citizenship:** | U.S. Citizen |
| **Immigration Status:** | N/A |
| **Country of Birth:** | United States |
| **Place of Birth:** | Lancaster, CA |
| | |
| **Legal Address:** | None |
| **Residence Address:** | None |
| | |
| **Alias(es):** | None |
| | |
| **Alternate IDs:** | Any Other ID : FN: 1215433699 |
| | Alias SSN/EIN: 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 |



***Restrictions on Use and Redisclosure of Presentence Investigation Report.*** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and  federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

**PART A. THE OFFENSE**

    **Charge(s) and Conviction(s)**

1. On October 3, 2017, a one-count Indictment was filed in the Northern District of California, charging the defendant Anna Armstrong with a violation of 18 U.S.C. § 4082(a) – Escape From Custody (Count One).

2. On November 7, 2017, the defendant pled guilty to Count One. Judgment and Sentencing are currently set for January 3, 2018 at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, United States District Judge.

3. The written Plea Agreement, filed pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, is enclosed for the Court's review. According to the Plea Agreement, the defendant and the Government agree to the following Sentencing Guidelines calculations: Base Offense Level 13 pursuant to USSG §2P1.1(a)(1), and a two-level decrease for Acceptance of Responsibility, for an Adjusted Offense Level 11. The parties have not reached an agreement regarding the defendant's Criminal History Category. The undersigned officer is in agreement with the proposed guideline calculations as set forth in the Plea Agreement. The parties agree that any sentence imposed in this case will run consecutive to the sentence imposed in the Southern District of California (CR 16-2724 BEN).

4. The defendant was arrested in this case on September 27, 2017. On September 28, 2017, she made an Initial Appearance before a magistrate judge in the District of Arizona. She was ordered detained and it was ordered that all future hearings be in the Northern District of California.

    **The Offense Conduct**

5. The following information was provided by the United States Attorney's Office, which included the Complaint, Plea Agreement, Indictment and reports from the Bureau of Prisons (BOP), and the case agent on December 13, 2017.

6. On March 3, 2017, in the Southern District of California, Anna Armstrong was sentenced to serve 63 months in the custody of the United States Bureau of Prisons, after a conviction for 21 U.S.C. §§ 952 and 960 – Importation of Methamphetamine (CR 16-2724 BEN). On April 6, 2017, Armstrong arrived at FCI Dublin in Dublin, California, and was placed in the minimum security "camp" part of the prison. The camp consists of buildings where inmates sleep, eat, and engage in daily activities. The grounds of the camp are enclosed by chain-link fence, but there is a driveway that remains open.

7. On September 4, 2017, at approximately 7:00 p.m, Armstrong and fellow inmate, Irene Michell, walked away from the prison. Staff received word that two inmates had left the institution and they conducted an emergency count. The U.S. Marshals were then notified of the escape.

8. Armstrong was located in Mexico and arrested on September 27, 2017. According to the case agent, when confronted by Mexican authorities the defendant initially stated that she was pregnant and that she had legal standing in Mexico and could not be sent back to the United States. However, shortly thereafter she relented and was arrested without further incident. The agent confirmed that numerous inmates had complained about the change in leadership at the institution and the lack of programs available for camp inmates.

**Victim Impact**

9. This is a Title 18 offense and there is no identifiable victim.

**Adjustment for Obstruction of Justice**

10. The probation officer has no information indicating the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

11. The defendant was interviewed by the probation officer and provided a statement wherein the defendant admitted involvement in the offense. Armstrong explained her behavior as follows: When she was in BOP custody in Dublin, she was frustrated with the lack of programs and a recent change in leadership. She admitted that she was still in love with her boyfriend Jose, who was living in Mexico. She was speaking to Jose and he was telling her that he did not think their relationship could withstand the separation. She explained that she was scared and did not want to lose him, so with another inmate, and very little preparation, they walked away from the facility. They found their way to Livermore, and then they took a bus to Los Angeles where they separated. From there, Armstrong went to Mexico to see Jose. She admitted that she never attempted to contact her family or her children. She knew that they would be disappointed in her. She said within 24 hours of being with Jose she realized it was a mistake. She explained that she had never been with him when she was clean and sober. She noticed things that she never had before: his home was cold and dirty; Jose was very ill and refused to see a doctor. At that point she also realized she was completely dependent on him; she could not leave the house without fear of being arrested. She stated that she was relieved when she was arrested.

12. She stated that she wants the Court to know "I messed up. I get it. My life is now dedicated to my recovery and getting better for my children. I've realized it's better for me to be alone."

**Offense Level Computation**

13. In accordance with the Supreme Court Decision in **United States v. Booker**, the following guideline calculations are no longer binding but advisory. Therefore, they must be considered by the sentencing court together with other sentencing goals. The current United States Sentencing Commission, 2016 Guidelines Manual, is being used as there are no ex post facto issues. USSG §1B1.11(a).

**Count 1**: **Escape from Federal Custody**

14. **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 751(a) is USSG §2P1.1. The base offense level is 13. USSG §2P1.1(a)(1).   **13**

15. **Specific Offense Characteristics:** None.   **0**

16. **Victim Related Adjustment:** None.   **0**

17. **Adjustment for Role in the Offense:** None.   **0**

18. **Adjustment for Obstruction of Justice:** None.   **0**

19. **Adjusted Offense Level (Subtotal):** **13**

20. **Chapter Four Enhancement:** None. **0**

21. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). **-2**

22. **Total Offense Level:** **11**

### PART B. THE DEFENDANT'S CRIMINAL HISTORY

23. Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following criminal history category calculation to be advisory.

    **Juvenile Adjudication(s)**

24. None.

    **Adult Criminal Conviction(s)**

| | **Date of Arrest** | **Conviction/Court** | **Date Sentence Imposed/Disposition** | **Guideline** | **Pts** |
|---|---|---|---|---|---|
| 25. | 02/02/2007 (Age 23) | Ct. 1: 484(a) PC - Petty Theft, misdemeanor; Ct. 2: 459 PC - Burglary, felony/ Los Angeles County Superior Court, Lancaster, CA; Docket No.: MA 03763-002 | 04/04/2007: 3 years probation, 45 days jail | 4A1.2(e)(3) | 0 |

Attorney representation is unknown. The arrest report was not received.

| | | | | | |
|---|---|---|---|---|---|
| 26. | 03/22/2010 (Age 27) | TX H&S 481.121(b)(1) - Possession of Marijuana, misdemeanor/ Harris County Criminal Court at Law No. 12, Harris County, TX; Docket No.: 1669212 | 08/09/2010: Pled guilty, deferred adjudication, 6 months supervision 12/08/2010: Supervision extended to 05/08/2011 07/05/2011: Proceedings dismissed, discharged from supervision | 4A1.1(c) | 1 |

Attorney representation is unknown. The arrest report was not received.

| | | | | | |
|---|---|---|---|---|---|
| 27. | 10/29/2016 (Age 33) | 21 U.S.C. §§ 952 and 960 - Importation of Methamphetamine, felony/ U.S. District Court, Southern District of California, San Diego, CA; Docket No.: 16-002724-001 BEN | 03/06/2017: 63 months BOP custody, three years supervised release | 4A1.1(a) | 3 |

The defendant was represented by counsel. According to the prior presentence report, on October 29, 2016, the defendant applied for entry to the U.S. from seam Mexico at the Calexico, California, West Port of Entry. Armstrong's daughter, Daisy (age 14) was a passenger in the vehicle. The vehicle was referred for secondary inspection. Armstrong told the border agents that she lived and worked in Baja California, as her deported husband resided in Mexico. A canine unit alerted to the trunk of their vehicle for the presence of narcotics. A subsequent search revealed a total of 9.4 kilograms of methamphetamine. The defendant's daughter was interviewed. She stated that her mother had been dating Jose Talamantez for about four months, and they resided between Mexicali and Calexico. She stated that she was home-schooled. She stated that she knew something was in the car and it was a way for them to make money because they were in financial need. Daisy revealed that Talamantez was very abusive to her mother and that he was threatening to kill her if she did not go today. Daisy was thereafter released to her father.

**Criminal History Computation**

28. The criminal convictions above result in a subtotal criminal history score of four.

29. The defendant committed the instant offense while under a criminal justice sentence for Importation of Methamphetamine (CR 16-02724); therefore, two points are added. USSG §4A1.1(d).

30. The total criminal history score is six. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of six establishes a criminal history category of III.

**Other Criminal Conduct**

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 31. | 11/12/2007 (Age 24) | Vehicle Theft | Los Angeles County Sheriff's Office, Los Angeles, CA | No charges filed |

According to the prior presentence report, the defendant and another person were found sitting in the vehicle in a vacant field. The vehicle had been reported stolen. Armstrong told officers that she had purchased the vehicle, but had no records to verify the sale.

**Pending Charges**

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 32. | 02/26/2007 (Age 23) | 3rd Degree Domestic Assault; Case No.: 07C7-CR0051 | Dent County Sheriff's Office, Dent County, MO | 10/10/2007: Warrant issued |

The arrest report revealed that the police responded to a residence regarding a disturbance. Upon arrival, a deputy made contact with the defendant's husband, Billy Armstrong, who reported that the defendant grabbed his phone and broke it. Mr. Armstrong reported that they had been separated for six months due to the defendant's drug use. She had recently requested to move back in with him. She came back to his home, but then attempted to leave with the children (of whom Mr. Armstrong had legal custody). Mr. Armstrong also had a restraining order to keep the defendant away from him. The defendant admitted that she tried to take her husband's phone away from him and it just broke. She said she did not realize the restraining order was still in effect outside California (where it had been issued). The prior presentence report author verified that this warrant was active but not extraditable outside of Missouri.

**Other Arrests**

33. None.

**PART C. OFFENDER CHARACTERISTICS**

34. The following information was provided by the defendant during the presentence investigation interview. Personal information provided by the defendant was corroborated by her mother for the prior presentence report. A message has been left with the defendant's mother to verify current information. A home investigation was not conducted as the defendant has never lived in this district. The BOP did not have a current progress report available. A message has been left with her case manager.

**Personal and Family Data**

35. Anna Armstrong was born in Lancaster, California, to the parental union of Raymond Walter Eskroth (age 54) of Lancaster and Diane Charlene McClair (age 49) of Lancaster. Mr. Eskroth is a personal trainer and a caretaker for his mother. Ms. McClair works in home health care. The defendant's parents separated before she was a year old; she is the only child born to her parents' union. She identified two maternal half-siblings: Tiffany Lynn Cox (age 30) works in medical records, and Preston Lee Cshafnitz (age 21) is a college student studying to be a doctor. They both reside in Lancaster.

36. The defendant has no contact with her father. She reported that her father introduced her to drugs at age 12, and that he has a long history of methamphetamine and opiate addiction.

37. After her parents separated, she went to live with her paternal grandparents who were subsequently awarded custody of her. Armstrong's mother, age 17 at the time, had no financial stability, given her youth, to raise a child or hire a private attorney. The defendant acknowledged that her paternal grandparents provided for her basic needs throughout her childhood.  However, she reported that they limited her contact with her

mother. Thus, as a teenager, the defendant grew to resent her grandparents for keeping her apart from her mother.

38. Armstrong's mother reported that the defendant's grandparents "spoiled" her and that at age 11, she went to live with her mother. From that point on, Armstrong went back and forth between her mother and her grandparents.

39. When asked if there were incidents of abuse in her childhood, Armstrong replied that she later learned from court documents that there were allegations that she had been molested as a child. Armstrong did not know details but indicated her mother may have more information on this topic. The defendant's mother stated that when the defendant was about two, she noticed a drastic change in her behavior. She suspected that Armstrong was being molested by her father. She noted that a child psychologist found that Armstrong had been sexually abused. However, charges against him were later dismissed. The defendant's mother accused Armstrong's father of abusing their daughter for a number of years.

40. In 2000 (age 17), she married her now-estranged husband, Billy Armstrong. Armstrong indicated that she and her estranged husband have separated multiple times in the last 15 years of their marriage. They separated most recently in 2013 and have remained apart for almost five years. She explained the dissolution of their marriage stems from the physical/mental abuse as well as Mr. Armstrong's mental health issues. The defendant stated that Mr. Armstrong was unemployed and relying on welfare for assistance. Mr. Armstrong reportedly suffered a heart attack in August 2016 and is in poor health, but he continues to smoke marijuana. The defendant mentioned that Mr. Armstrong is a daily smoker of marijuana and while they were together, she had to replenish his marijuana supply every day to avoid him becoming upset with her. She indicated Mr. Armstrong was "bipolar and borderline schizophrenic." The defendant stated that on several occasions, Mr. Armstrong was physically aggressive towards her to the point she had to defend herself. The defendant also stated that she endured episodes of mental abuse from Mr. Armstrong.

41. The defendant shares three children with Mr. Armstrong: Daisy (age 14); Alyssa (age 12); and Caleb (age 8). The children currently live with Mr. Armstrong. However, the two oldest children have reportedly expressed interest in living with their maternal grandmother because of the verbal abuse they receive from their father.

42. Armstrong stated that the father (not named) of her youngest child, Elias (age 2), is unaware he fathered a child with her. At the time of her arrest in October 2016, Elias was living with her boyfriend, Jose Talamantez, in Mexico. About six months later, the child was relocated to live with Armstrong's mother where he remains. Prior to her arrest in the prior case the defendant and Mr. Talamantez had been dating for about a year. Mr. Talamantez reportedly had a severe accident while repairing a motorcycle in December 2016 and was unable to continue caring for her son.

43. Armstrong reported that Jose has always been emotionally abusive to her. He has threatened to kill her, her mother, and her children. He has also hit her on occasion. She stated that she was unable to leave him because of her addiction to heroin. She stated that after her arrest in the instant escape case, she has had no contact with Jose. She reported that he has reached out to her attorney, but Armstrong has not responded to him.  She stated that once she decided that their relationship was over, her life has gotten better.  She has had no contact with her children, as she does not know what to tell them about her behavior. She knows that they believe she chose Jose over finishing her sentence and getting home to them. She said she has no answers for them on why she did what she did. She hopes that one day they can forgive her. She also explained that her mother is not accepting her phone calls, so she has also not had any contact with her youngest son.

### Physical Condition

44. Armstrong is a 34 year old white female. She stands 5'5" tall and weighs 175 pounds.  She has brown hair and hazel eyes.  She has the following tattoos: "Ronnie" on her right wrist; a heart with wings on her back; and "Ronnie on her left ring finger."

45. In 2016, she was told that she may need hip replacement surgery. She believes the injury is a result of a car accident when she was 14. She takes over the counter medicine for pain relief.

### Mental and Emotional Health

46. The defendant reported that she has no history of mental or emotional health problems or treatment for such issues. She has never experienced suicidal ideation nor has she attempted such an act.

47. According to the prior presentence report, jail medical records indicated that the defendant was treated with medication for insomnia, depression, and anxiety. The defendant reported to medical staff there that she has had insomnia since her youth and disavowed any mental illness.

### Substance Abuse

48. Armstrong reported that she rarely drank alcohol. She revealed she was introduced to marijuana at age 12 by her father. She indicated that throughout her youth, she and her father used drugs together. She smoked marijuana on average daily from ages 12 to 25. She ceased using this drug after the birth of her eldest daughter because she began having drug-induced anxiety issues.

49. She reported that her father also introduced her to methamphetamine at age 12. She used methamphetamine whenever she had access to it. For several years, the defendant only smoked methamphetamine, but in 2005 (age 22), she started using this drug intravenously. Soon thereafter, heroin was added to her drug regimen after she and her husband separated. She said that she turned to using methamphetamine daily when her youngest child was eight months old, in August 2015, following the premature passing of her girlfriend Ms. Robles.  After that incident, the defendant admitted that she fell into heavy drug dependence.

50. In August 2015, the defendant began using heroin "all day and every day" until her arrest in October 2016. She indicated that it was costing her $80 a day to fuel her heroin habit in the U.S., but in Mexico, the price was only $20 a day. She admitted that one of the reasons she moved to Mexico was because drugs were cheaper.

51. Armstrong noted she was not using drugs (other than methadone treatment) while she was pregnant with her youngest child. The defendant indicated she started methadone treatments in 2012 at an unspecified clinic in Arizona. She reported that she was clean from drugs almost the entire time she lived in Texas (from 2008 to 2012).

52. Armstrong reported that she never used drugs or alcohol while she was on escape status. She has not used drugs since her arrest in October 2016.

**Educational, Vocational and Special Skills**

53. Armstrong reported she earned her high school diploma in 2001 through an adult school in Rosamond, California. She did not recall the name of the school. From 1999 to 2001, she attended the Antelope Valley College in Lancaster where she took psychology classes.

54. In 2002, the defendant received a dental assistant certificate form the Clarita Career College in Lancaster now known as the Charter Career College. Correspondence received from this school reflects the defendant was enrolled from November 2001 to January 2003 and earned a dental assistant certificate on January 27, 2003.

55. In 2004, Armstrong attended a nursing school for eight months where she earned a certification equivalent to a certified nursing assistant (CNA) certificate. She believed the college was named, The Palmdale School of Nursing [an online query of this school listed no findings]. In 2012, the defendant received a peer support certification by taking courses arranged via The Living Center (TLC), a transitional living center, located in Yuma.

**Employment Record**

56. For six months leading up to her arrest in October 2016, Armstrong had been working periodically for the Robles family (in Mexicali) as an independent caregiver of an elderly gentleman. When employed, she worked full-time hours and was paid $600 to $800 a month. She stated that the Robles were extended relatives of her late girlfriend.

57. From 2008 to part of 2016, the defendant was a homemaker. During this period, she was supported by her now-estranged husband, romantic partners, or government aid.

58. Between 2002 and 2008, Armstrong worked seasonally for H&R Block in Rosamond. She held a position as a full-time client service coordinator and was paid $8.50 an hour. A telephonic contact with a representative of this business confirmed Armstrong worked previously as a receptionist during tax season for several years; however the exact dates were not known.

### Financial Condition: Ability to Pay

59. The defendant has been in custody since October 2016 (other than three weeks on escape status). She has not worked regularly for many years. It appears that her long-standing drug addiction has interfered with her ability to obtain and keep employment.

### Analysis

60. The defendant reported no assets or income. It appears that she would have difficulty paying a fine within the guideline range.

## PART D. SENTENCING OPTIONS

61. Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following guideline provisions to be advisory.

### Custody

62. **Statutory Provisions:** The maximum term of imprisonment on Count 1 is five years. 18 U.S.C. § 751(a). This offense is a Class D felony. 18 U.S.C. § 3559(a)(4).

63. **Guideline Provisions:** Based upon a total offense level of 11 and a criminal history category of III, the guideline imprisonment range is 12 months to 18 months. Since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d).

### Supervised Release

64. **Statutory Provisions:** The Court may impose a term of supervised release of not more than three years on Count 1. 18 U.S.C. § 3583(b)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA

   collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

65. **Guideline Provisions:** Since the offense for Count 1 is a Class D Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d)

### Probation

66. **Statutory Provisions:** The defendant is eligible for not less than one nor more than five years probation because the offense is a Class D Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 USC § 3563(a)(2).

67. **Guideline Provisions:** Since the applicable guideline range is in Zone C of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2).

### Fines

68. **Statutory Provisions:** The maximum fine is $250,000. 18 U.S.C. § 3571(b).

69. A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

70. **Guideline Provisions:** The fine range for this offense is from $4,000 to $40,000. USSG §5E1.2(c)(3).

71. Costs of prosecution shall be imposed on the defendant as required by statute. USSG 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG 5E1.2(d)(7) and 18 U.S.C. 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides the following monthly cost data:

|  | **Bureau of Prisons Facilities** | **Community Correction Centers** | **Supervision by Probation Officer** |
|---|---:|---:|---:|
| Daily | $88.00 | $71.00 | $11.00 |
| Monthly | $2,665.00 | $2,174.00 | $341.00 |
| Annually | $31,976.00 | $26,083.00 | $4,097.00 |

**Restitution**

72. **Statutory Provisions:** Restitution is not applicable in this case. 18 U.S.C. § 3663.

73. **Guideline Provisions:** Restitution is not applicable in this case.

**Forfeiture**

74. **Statutory Provisions:** Forfeiture is not an issue.

75. **Guideline Provisions:** Forfeiture is not an issue.

**Denial of Federal Benefits**

76. **Statutory Provisions:** None.

77. **Guideline Provisions:** None.

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

78. The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

79.   The probation officer has not identified any factors that would warrant a sentence outside the applicable advisory guideline range.

                                                         Respectfully Submitted,

                                                         Yador J. Harrell
                                                         Chief U.S. Probation Officer

                                                         By: Jessica A. Goldsberry
                                                            U.S. Probation Officer Specialist

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer

ADDENDUM TO THE PRESENTENCE REPORT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES V. ANNA RAYLENE ARMSTRONG
DKT. 0971 4:17CR00529-001 YGR

The United States Probation Officer certifies that the presentence investigation report, including any revisions thereof and this addendum, has been disclosed to the defendant's counsel for discussion with the defendant, and to counsel for the Government, pursuant to Crim. L.R. 32-5 and FRCrimP 32(g).

## OBJECTIONS

### By the Government

1. A written response has been received from the Government, which is in compliance with Crim. L.R. 32-4(b) and (c). There are no objections to the presentence report.

### By the Defendant

2. A written response has been received from the defense counsel, which is in compliance with Crim. L.R. 32-4(b) and (c). There are no objections to the presentence report.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By: Jessica A. Goldsberry
U.S. Probation Officer Specialist

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer

# SENTENCING RECOMMENDATION

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## UNITED STATES V. ANNA RAYLENE ARMSTRONG, DKT. 4:17CR00529-1 YGR

| | | |
|---|---|---|
| **TOTAL OFFENSE LEVEL** | | 11 |
| **CRIMINAL HISTORY CATEGORY** | | III |

| | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | Ct. 1: 5 years | 12 months-18 months | 12 months |
| **SUPERVISED RELEASE:** | Ct. 1: 3 years | Ct. 1: 1 year-3 years | 3years |
| **PROBATION:** | 1 year-5 years | Ineligible | Not Recommended |
| **FINE:** | Ct. 1: $250,000 | $4,000-$40,000 | Waived |
| **RESTITUTION:** | Not applicable | Not applicable | Not Applicable |
| **SPECIAL ASSESSMENT:** | Ct. 1: $100 | Ct. 1: $100 | Ct. 1: $100 |

**Justification:**

Anna Armstrong, age 34, appears before the Court after pleading guilty to one count of Escape from Federal Custody.  On September 4, 2017, the defendant, who was serving a 63 month sentence for a drug conviction out of the Southern District of California, walked away from the Federal Prison Camp in Dublin, California, with another inmate. The two women travelled to the Los Angeles area, and the defendant went on to her boyfriend's home in Mexico. The defendant stated that she left the prison for several reasons: She was frustrated with the lack of available programs and the new leadership at the institution, and she was concerned because her boyfriend had threatened to leave her. Armstrong stated that as soon as she got to Mexico, she realized she made a mistake. She was arrested just three weeks later.

Armstrong has prior convictions for Petty Theft, Burglary, Possession of Marijuana, and Importation of Methamphetamine. The defendant's previous federal offense was also related to her relationship with her boyfriend, Jose.

Armstrong was born and raised in Southern California. Her mother was 17 when Armstrong was born. She was raised primarily by her maternal grandparents. She had little contact with her father, who later introduced her to drugs at age 12.  When she was very young, her mother accused Armstrong's father of molesting her.  It appears that the case was investigated, but charges were not filed. When Armstrong was 17, she got married. She had a turbulent relationship with her husband with whom she has three children.  Armstrong began the regular use of marijuana at age 12; she later became a regular user of methamphetamine and then heroin.  Armstrong had regular employment in the mid-2000s, but her drug dependence later made employment difficult.

Pursuant to 18 U.S.C. § 3553(a), the Court may consider a variety of factors in determining an appropriate sentence for the defendant. The probation officer believes that a low-end guideline sentence is sufficient in this case.  A full year of additional custody (in addition to the remaining sentence she has left to serve on the SD/CA case) addresses the seriousness of her escape – many federal resources were spent searching for the defendant and her accomplice, and any type of escape by an inmate causes fear and concern in the local community.  A low-end sentence also takes into account that there is no evidence that the defendant committed any new crimes, or reverted to drug use while on escape status. The defendant will now also suffer numerous collateral consequences, including the probability of her losing her good-conduct credit and being ineligible for other low-security facilities, and she has lost the trust of her family who simply wanted her to finish her sentence and come home.  The defendant appears remorseful for her conduct and ready to move forward.  She acknowledged that though her escape made her life more difficult in so many ways, she feels that, in a way, this needed to happen so that she could move forward on her own.

A sentence of 12 months custody is recommended to be followed by three years of supervised release.  This sentence should be served consecutively to her prior federal sentence.  It is recommended that in light of her prior convictions, she register as a drug offender and she be subject to a search condition.  She is also in need of continued drug treatment.  She must comply with DNA collection. She does not have the ability to pay a fine, but she must pay a $100 special assessment.

**Voluntary Surrender:**

It appears the defendant is a person whose release is not restricted under 18 U.S.C. §3143. The defendant has been in continuous federal custody. Therefore, the defendant is not considered to be a good candidate for voluntary surrender.

**Recommendation**

It is respectfully recommended that sentence in this case be imposed as follows:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Anna Armstrong is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 12 months.

The term of imprisonment imposed by this judgment shall run concurrently with the defendant's term of imprisonment in Docket 16-2724 BEN, Southern District of California

Re:  Armstrong, Anna (4118303)                                                                                              Page 3

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three (3) years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another Federal, State or local crime, shall comply with the standard conditions that have been adopted by this court, shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and 2 periodic drug tests thereafter, and shall comply with the following conditions:

**<u>Recommendation</u>**

1. You shall pay any special assessment that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2. You shall make an application to register as a drug offender pursuant to state law.

3. You shall cooperate in the collection of DNA as directed by the probation officer.

4. You shall submit your person, residence, office, vehicle, or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to such a search may be grounds for revocation; you shall warn any residents that the premises may be subject to searches.

5. You shall participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until such time as you are released from treatment by the probation officer. You are to pay part or all of the cost of this treatment, at an amount not to exceed the cost of treatment, as deemed appropriate by the probation officer. Payments shall never exceed the total cost of urinalysis and counseling. The actual co-payment schedule shall be determined by the probation officer.

6. You shall abstain from the use of all alcoholic beverages.

It is further ordered that the defendant shall pay to the United States a special assessment of $100. Payments shall be made to the Clerk of U.S. District Court, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.  During imprisonment, payment of criminal monetary penalties are due at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.

The Court finds the defendant does not have the ability to pay the fine and orders it waived.

                                     Respectfully Submitted,

                                     Yador J. Harrell
                                     Chief U.S. Probation Officer

                                     _____
                                     By: Jessica A. Goldsberry
                                          U.S. Probation Officer Specialist

Approved:

_____
Joshua D. Sparks
Supervisory U.S. Probation Officer